Gary Sparling
sparling@sohalang.com
Idaho Bar # 6620
Soha & Lang, P.S.
1325 Fourth Avenue, Suite 2000
Seattle, WA 98101
Phone: (206) 624-1800
Fax: (206) 624-3585
Attorney for Plaintiffs The Cincinnati Insurance Company
and The Cincinnati Indemnity Company

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, an Ohio corporation; and THE CINCINNATI INDEMNITY COMPANY, an Ohio corporation, | Cause No. 1:16-cv-451<br>**CIVIL CASE** |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF** |
| vs. | **28 U.S.C. § 1332(a)(2)** |
| REFLOK, INC., f/k/a REFLOK-NORTH AMERICA, INC., an Idaho corporation; DIRECT EXPANSION SOLUTIONS, INC., a Texas corporation; DMG CORPORATION, a California corporation; HAVTECH, INC., a Delaware corporation; NORMAN S. WRIGHT MECHANICAL EQUIPMENT CO., LLC, a California limited liability company; and DOE DEFENDANTS 1 through 5, | |
| Defendants. | |

Plaintiffs The Cincinnati Insurance Company and The Cincinnati Indemnity Company

(collectively hereinafter, "Cincinnati") allege as follows:

COMPLAINT FOR DECLARATORY RELIEF– 1
**CAUSE NO.** 1:16-cv-451

6900.00154 ij07eg18qg

## I.    NATURE OF ACTION

1.    In this action, Plaintiffs Cincinnati seek a declaration pursuant to 28 U.S.C. § 2201(a), regarding the extent of their obligation, if any, to defend, indemnify or pay insurance benefits under policies of insurance issued in Idaho to Defendant Reflok-North America, Inc. (the "Policies" as further defined below), with respect to underlying products liability claims and lawsuits against their Named Insured and/or multiple additional insureds under the Policies.  Such underlying claims and lawsuits include, without limitation, the following:

a.    *BWY 8 Hotel Partnership Ltd. v. EBCO General Contractor, Ltd., et al.*, Harris County, Texas, District Court Cause No. 2014-64032 (the "BWY 8 Hotel Lawsuit");

b.    *Singpoli (Hop Kin) Construction & Decoration (Nevada), et al., v. DMG Corp., et al.*, Los Angeles County, California, Central District Superior Court Case No. BC619609 (the "Singpoli Lawsuit");

c.    Atrium Center for Rehabilitation, in Brooklyn, New York;

d.    Texas Gulf Coast Regional Airport, in Angleton, Texas;

e.    Buffalo Soldiers Museum, in Houston, Texas;

f.    LaPorte Fire Station, in LaPorte, Texas;

g.    Kenmore Apartments, in Washington, D.C.;

h.    Archer Western Contractors, Ltd., in Irving, Texas;

i.    Santa Fe Police Station, in Santa Fe, Texas;

j.    Alamo Stadium, in San Antonio, Texas;

k.    Durant Hotel, in Berkeley, California;

l.    U.C. Berkeley Eshleman Hall, in Berkeley, California;

COMPLAINT FOR DECLARATORY RELIEF– 2
**CAUSE NO.** 1:16-cv-451

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

6900.00154 ij07eg18qg

1           m.     The Gables Park Plaza, in Austin, Texas;

2           n.     Twin Pines Nursing Home, in Victoria, Texas;

3           o.     Neff White Elementary School, in Houston, Texas;

4           p.     Peach Creek Elementary School, in Splendora, Texas;

5           q.     Nazareth House, in California;

6           r.     Hospice of Humboldt, Bldg. C, in Eureka, California; and

7           s.     Drury Hotel, in San Antonio, Texas.

8     2.     The foregoing claims and lawsuits are collectively referenced herein as the
9 "Underlying Claims."

## II.    <u>PARTIES</u>

11     3.     Plaintiff The Cincinnati Insurance Company is an Ohio corporation having its
12 principal place of business in Fairfield, Ohio.

13     4.     Plaintiff The Cincinnati Indemnity Company is an Ohio corporation having its
14 principal place of business in Fairfield, Ohio.

15     5.     Plaintiffs will hereinafter be collectively referenced as "Cincinnati."

16     6.     On information and belief, defendant Reflok, Inc. f/k/a Reflok-North America,
17 Inc. ("Reflok") is an Idaho corporation having its principal place of business in Meridian,
18 Idaho.

19     7.     On information and belief, defendant Direct Expansion Solutions, Inc. ("DXS")
20 is a Texas corporation having its principal place of business in Austin, Texas.

21     8.     On information and belief, defendant DMG Corporation ("DMG") is a
22 California corporation having its principal place of business in Orange, California.

23

COMPLAINT FOR DECLARATORY RELIEF– 3
**CAUSE NO.** 1:16-cv-451

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

6900.00154 ij07eg18qg

9.     On information and belief, defendant Havtech, Inc. ("Havtech") is a Delaware corporation having its principal place of business in Olney, Maryland.

10.     On information and belief, defendant Norman S. Wright Mechanical Equipment Company, LLC, ("Wright") is a California limited liability company having its principal place of business in Brisbane, California.

11.     The true names and capacities of Defendants Doe One through Doe Five are presently unknown to Cincinnati, which therefore sues those defendants by fictitious names. Cincinnati will seek leave of this Court to amend this Complaint when said true names and capacities have been ascertained.  Each reference in this Complaint to a "Doe Defendant" or a specially named defendant refers also to all Defendants sued under fictitious names.

12.     Defendants DXS, DMG, Havtech, Wright, and Doe Defendants One through Five are collectively referenced herein as the "Vendor/Distributor Defendants."

### III.     <u>JURISDICTION AND VENUE</u>

13.     <u>Subject Matter Jurisdiction.</u>  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because this controversy is between citizens of different states and because the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332(a).

14.     <u>Personal Jurisdiction.</u>  This Court has personal jurisdiction over defendant Reflok, which is an Idaho corporation having its principal place of business in Meridian, Idaho. This Court has personal jurisdiction over the other defendants because, on information and belief, each Vendor/Distributor Defendant transacted business within this state by contracting to purchase and to be the exclusive distributor of Reflok Products in defined geographic areas of the United States and by purchasing and accepting legal responsibility for the Reflok

COMPLAINT FOR DECLARATORY RELIEF– 4
**CAUSE NO.** 1:16-cv-451

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

6900.00154 ij07eg18qg

Products so purchased in the State of Idaho.  By so doing, each Vendor/Distributor Defendant purposefully availed itself of the privilege of conducting business in the State of Idaho by, *inter alia*, reaching out beyond its state to create continuing relationships and obligations with Reflok, by purchasing and accepting ownership of goods in the State of Idaho, and by agreeing that the laws of the State of Idaho would govern their relationship with Reflok, thereby invoking the benefits and protections of this state's laws.  Cincinnati's claims in this action arise out of each defendant's forum-related activities.

15. <u>Venue</u>.  Venue is properly laid in this Court because Reflok is located in this district and, on information and belief, all other defendants accepted possession and legal responsibility for goods purchased from Reflok in this district.  The goods so purchased from Reflok and liability claims related thereto are the subject matter of the Underlying Claims.

## IV.   <u>FACTUAL ALLEGATIONS</u>

16. Reflok manufactures and/or supplies aluminum tubing, connectors, and Variable Refrigerant Volume ("VRV") fittings under the "Reflok" label or brand name (the "Reflok Products").

17. Reflok entered into a "Sales Distributor Agreement for Commercial HVAC-VRV/VRF Systems" or a similar agreement with each Vendor/Distributor Defendant (the "Agreements").  A sample form of Sales Distributor Agreement is attached hereto as Exhibit A.

18. In the Agreements, Reflok appointed each respective Vendor/Distributor Defendant to be its exclusive sales distributor for the sale of certain Reflok Products within a specified sales territory.

COMPLAINT FOR DECLARATORY RELIEF– 5
**CAUSE NO.** 1:16-cv-451

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/FAX (206) 624-3585

6900.00154 ij07eg18qg

19.     The Agreements state, *inter alia*, that the Reflok Products were delivered to the Vendor/Distributor Defendants "F.O.B. Reflok-NA's manufacturing or distribution facilities." Reflok or its agents have indicated to Cincinnati that such facilities are located in Idaho.

20.     The Agreements state, *inter alia*, that "this Agreement shall be governed by the laws of the State of Idaho, without regard to the choice-of-laws or conflicts-of-law's provisions of such state which would apply the laws of any other jurisdiction." (*See, e.g.,* Exhibit A ¶ XI.E.)

21.     The Cincinnati Insurance Company issued Commercial General Liability Insurance to Reflok under Policy No. ENP 010 75 50, which was in effect from September 22, 2011 to September 22, 2012.

22.     The Cincinnati Indemnity Company issued Commercial General Liability Insurance to Reflok under Policy No. ENP 010 75 50, which was in effect for three consecutive annual periods from September 22, 2012 to September 22, 2015.

23.     The Cincinnati Insurance Cincinnati Insurance Company Policy No. ENP 010 75 50 and The Cincinnati Indemnity Company Policy No. ENP 010 75 50 will be collectively referenced herein as the "Policies."

24.     The Policies contain endorsements providing limited coverage for vendors that distribute or sell Reflok's Products in the regular course of the vendor's business, subject to certain terms and limitations.

25.     The Policies also contain certain conditions, limitations and exclusions, including, without limitation:

            a.     A threshold insuring requirement of "property damage" during the policy period;

COMPLAINT FOR DECLARATORY RELIEF– 6
**CAUSE NO.** 1:16-cv-451

6900.00154 ij07eg18qg

b.    An exclusion for "property damage" for which Reflok is obligated to pay damages by reason of the assumption of liability in a contract or agreement, subject to certain exceptions (the "Contractual Liability Exclusion");

c.    An exclusion for "property damage" to Reflok's "product" (the "Your Product Exclusion");

d.    An exclusion for "property damage" to "impaired property" or property that has not been physically injured, arising out of a "defect, deficiency, inadequacy or dangerous condition" in Reflok's "product" (the "Impaired Property Exclusion"); and

e.    An exclusion for liability or damages claimed for any loss, cost or expense for the "loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal" of Reflok's "product" or "impaired property" (the "Product Recall Exclusion").

26.    Each defendant is a target of claims and/or lawsuit(s) brought by third parties seeking damages for problems allegedly relating to Reflok's Products, or the installation, maintenance or repair of same.  In some instances, the Vendor/Distributor Defendants seek indemnity from Reflok for such claims.  Reflok is seeking defense and indemnity under the Policies for all of such claims and suits.  Some or all of the Vendor/Distributor Defendants are also seeking defense and indemnity from Cincinnati for such claims and suits, alleging status as additional insureds under the Policies.

27.    Cincinnati is currently defending Reflok and DXS in the BWY 8 Hotel Lawsuit and Reflok in the Singpoli Lawsuit under a full reservation of rights.

COMPLAINT FOR DECLARATORY RELIEF– 7
CAUSE NO. 1:16-cv-451

6900.00154 ij07eg18qg

## V.    CAUSE OF ACTION FOR DECLARATORY RELIEF

28.    Cincinnati realleges the preceding paragraphs as though fully set forth herein.

29.    An actual controversy within the jurisdiction of this Court exists between Cincinnati and all defendants regarding the existence and scope of coverage under the Policies with respect to the claims and damages alleged in the Underlying Claims.

30.    Cincinnati is entitled to a declaration regarding the extent of its obligation, if any, to defend, indemnify or pay insurance benefits with respect to the Underlying Claims based upon, *inter alia* and without limitation, the threshold insuring requirement of "property damage" during the policy period, the Contractual Liability Exclusion, the Your Product Exclusion, the Impaired Property Exclusion, and the Product Recall Exclusion.

31.    In addition, or alternatively, Cincinnati is entitled to a declaration regarding the extent of its obligation, if any, to defend, indemnify or pay insurance benefits for the Underlying Claims based upon the application of one or more other terms, limitations, exclusions and/or endorsements in the Policies.

32.    Cincinnati is also entitled to a declaration regarding the extent of its obligation, if any, to defend Reflok and/or any Vendor/Distributor Defendant in any of the Underlying Claims, and a declaration decreeing whether Cincinnati may immediately cease and withdraw from any further defense of Reflok and/or any Vendor/Distributor Defendant in the Underlying Claims.

## VI.    RESERVATION OF RIGHTS

Cincinnati reserves the right to amend its complaint to assert additional claims, allegations and/or other matters as additional facts are obtained through discovery and investigation.

COMPLAINT FOR DECLARATORY RELIEF– 8
**CAUSE NO.** 1:16-cv-451

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

6900.00154 ij07eg18qg

## VII.   __PRAYER FOR RELIEF__

WHEREFORE, Cincinnati prays for the following relief:

1.      For a declaration regarding the extent of Cincinnati's obligation, if any, to defend, indemnify or pay insurance benefits with respect to the Underlying Claims based upon one or more conditions, limitations and/or exclusions in the Policies;

2.      For a declaration regarding the extent of Cincinnati's obligation, if any, to defend Reflok and/or any Vendor/Distributor Defendant with respect to the Underlying Claims;

3.      For a declaration decreeing whether Cincinnati may immediately cease and withdraw from any further defense of Reflok and/or any Vendor/Distributor Defendant in the Underlying Claims; and

4.      For such other and further relief as this Court deems just and equitable.

DATED this 10th day of October, 2016.

SOHA & LANG, P.S.

By:   *s/Gary Sparling*
    Gary Sparling, Idaho Bar # 6620
    Email address sparling@sohalang.com
    **Soha & Lang, P.S.**
    1325 Fourth Avenue, Suite 2000
    Seattle, WA  98101
    Telephone:  206-624-1800
    Facsimile:   206-624-3585
    Attorneys for Plaintiff The Cincinnati Insurance Company and The Cincinnati Indemnity Company

COMPLAINT FOR DECLARATORY RELIEF– 9
CAUSE NO. 1:16-cv-451

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/FAX (206) 624-3585

6900.00154 ij07eg18qg

# EXHIBIT A

**SALES DISTRIBUTOR AGREEMENT FOR COMMERCIAL HVAC-VRV/VRF SYSTEMS**

THIS SALES DISTRIBUTOR AGREEMENT (this "*Agreement*") is made as of this _17th_ day of February, 2012_ by and between REFLOK NORTH AMERICA, INC., an Idaho corporation, ("*Reflok-NA*") and   Direct Expansion Solutions (DXS), a Corporation ("*Distributor*").

RECITALS

**WHEREAS**, Reflok-NA manufactures or supplies, or both, aluminum tubing, connectors, and Variable Refrigerant Volume ("*VRV*") fittings, under the "Reflok" label or brand name; and

**WHEREAS**, it is the mutual desire of the above-referenced parties that a substantial sales volume and inventory for all the Products (as hereinafter defined) be developed and maintained in the Territory (as hereinafter defined); and

**WHEREAS**, Reflok-NA desires to appoint Distributor to be its exclusive distributor for the sale of Commercial HVAC Products in the Territory, subject to the terms and conditions of this Agreement; and

**WHEREAS**, Distributor desires to act as the independent contractor for selling Products in the Territory, subject to the terms and conditions of this Agreement.

AGREEMENT

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are hereby incorporated into this Agreement, and for the mutual promises herein set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**I.    APPOINTMENT OF DISTRIBUTOR**

    A. Reflok-NA hereby appoints Distributor to be its exclusive sales distributor for the sale of the "Reflok"-labeled products specified in Exhibit A attached hereto ("*Products*") in the territory shown on the map attached hereto as Exhibit B (the "*Territory*"), but only for HVAC Commercial Market Applications.  For purposes of this Agreement, the "*HVAC Market Applications*" shall mean and include any comfort conditioning applications and including the VRF and/or VRV systems that are part of heating, ventilating and/or air conditioning systems in non-"line set" applications.  For so long as Distributor is performing in compliance with this Agreement, Reflok-NA shall not appoint any other distributor or representative with responsibility for the sale of the Products covered by this Agreement within the Territory for comfort conditioning applications.

    B. Distributor shall not have authority to solicit orders from or sell to, and shall not receive commissions on sales in the Territory for:

        1. Any House Accounts in the Territory.  For purposes of this Agreement, "*House Accounts*" shall mean those certain accounts listed on Exhibit C attached to this Agreement or that may be added in the future.  Distributor acknowledges that Reflok-NA reserves the right to make any direct sales of its Products to the House Accounts.

    2. Any manufacturers who are competitors of Reflok-NA, as determined by Reflok-NA in its sole discretion.

    3. Any account for which, in Reflok-NA's sole opinion, proper sales efforts have not been made by Distributor and which Reflok-NA designates in writing to Distributor as a House Account.

    4. Any projects for Data/Computer centers, or for Refrigeration systems such as grocery systems. Note: these are separate Distributor contracts for each territory.

C. Distributor shall not solicit orders for Products from, or sell Products to, persons located outside the Territory without agreement of the distributor or representative for such outside territory and without the prior written consent of Reflok-NA.

D. On the signing of this agreement and at least once annually thereafter, Distributor shall inform Reflok-NA in writing of all products that comprise Distributor's product lines. Distributor shall not sell, or solicit orders for, any product that is competitive with (in Reflok-NA's sole discretion) any of the Products to be sold by Distributor hereunder.

E. The relationship of Reflok-NA and Distributor established by this Agreement is that of independent contractors, and nothing in this Agreement shall be construed to constitute the parties as partners, joint ventures, co-owners, or otherwise as participants in a joint or common undertaking, or as employer and employee, or allow Distributor to create or assume any obligation on behalf of Reflok-NA for any purpose whatsoever. Distributor shall have no authority to commit Reflok-NA in any manner, without the prior written consent of Reflok-NA either hereunder or otherwise, or to use Reflok-NA's name in any way not specifically authorized by this Agreement. In particular, Distributor shall not use the Reflok-NA name as part of the Distributor's name, nor shall Distributor hold itself out as having any other relationship with Reflok-NA other than as that of an independent contractor authorized by contract to represent and sell Reflok-NA's Products.

F. All expenses of the operation of Distributor's office and Distributor's activity as an independent contractor shall be the sole responsibility of Distributor. All sales and other agreements between Distributor and its customers are Distributor's exclusive responsibility and shall have no effect on Reflok-NA's obligations under this Agreement.

## II.   TERM AND TERMINATION OF AGREEMENT

A. The term of this Agreement shall commence upon the date set forth in the introductory paragraph above, and shall continue for one (1) calendar year thereafter, unless earlier terminated by either party as set forth in this Agreement.

B. Each party has the absolute and unqualified right to terminate this Agreement at any time during the term by giving the other party at least thirty (30) days' prior written notice of termination. Such termination shall be effective at the end of the thirtieth (30th) day after delivery of written notice of same in accordance with this Agreement. Reflok will not terminate this agreement within the first one year from date of execution to give Distributor adequate time to develop a market.

C. Notwithstanding anything to the contrary contained in this Agreement, Reflok-NA has the right to immediately terminate this Agreement:

1. Upon the death of the Distributor if the Distributor is an individual;

2. Upon any change of control if the Distributor is a partnership or corporation (for purposes of this Agreement, a "change in control" shall be deemed to occur upon the transfer, assignment, sale, or other hypothecation of more than fifty percent (50%) of the legal or equitable ownership of Distributor or a material change in the management of Distributor, as determined by Reflok-NA in its reasonable discretion);

3. Upon insolvency, bankruptcy (voluntary or involuntary), dissolution, or other cessation of business activities by Distributor;

4. If Distributor begins selling products competitive with any of the Products; or

5. If Distributor breaches any term of this Agreement, including, but not limited to, the promise to pay all invoices in accordance with the terms of this Agreement.

D. Upon termination of this Agreement for any reason, Distributor shall immediately return to Reflok-NA any and all Confidential Information (as defined herein) in accordance with Article X below.

## III.   MINIMUM SALES ACTIVITY

A. During the term of this Agreement, Distributor shall use its best efforts in promoting, maintaining and increasing the sales of all of the Products in the Territory. Distributor shall not make any false or misleading representations to customers or others regarding Reflok-NA or the Products. At all times during the term of this Agreement, Distributor's activities under this Agreement shall be in complete compliance with all federal, state, provincial, and local statutes, ordinances, and regulations.

B. Reflok-NA and Distributor shall, at least thirty (30) days prior to the end of each calendar year, agree upon and establish an annual quota for sales by the Distributor within the Territory for the next succeeding calendar year. If Reflok-NA and Distributor fail to set a quota for any year prior to the commencement of such year, the quota set for such immediately preceding calendar year shall continue in force until such time as Reflok-NA and Distributor agree upon a new quota. In establishing sales quotas, Reflok-NA and Distributor will consider such factors as prior sales in the Territory by Reflok-NA, Distributor, or prior distributor(s), market potential, company growth targets, and general economic trends in the industry.

C. Reflok-NA shall furnish to Distributor, at minimal expense to Distributor, reasonable quantities of catalogs, literature, and other materials with respect to the Products. Any unused literature or other equipment belonging to Reflok-NA shall be returned to Reflok-NA at any time upon its request and immediately upon termination of the Distributor in accordance with the terms of this Agreement (including, without limitation, Article X below).

D. Distributor, at Distributor's sole cost and expense, shall make its personnel available for any training deemed necessary by Reflok-NA.

IV.    PRICES, TERMS, AND SALES POLICY

    A.    Notwithstanding anything to the contrary set forth in this Agreement, Distributor expressly acknowledges that Reflok-NA shall have no obligation to continue the production of any Product, unless expressly agreed in writing by Reflok-NA. Reflok-NA further expressly reserves the right to alter, modify or change any of the Products from time to time in its sole discretion.

    B.    All prices, discounts, specifications, and terms governing the sales of the Products to Distributor shall be within the exclusive control of Reflok-NA and shall be established by Reflok-NA by written notice to Distributor. The initial terms for the sale of the Products are set forth in Exhibit D attached hereto. Reflok-NA may alter the initial terms at any time by giving written notice of such change(s) to Distributor, which change(s) shall apply to all orders received after the effective date of the change. Price increases or decreases shall not affect unfulfilled purchase orders accepted by Reflok-NA prior to the effective date of the price increase.

    C.    Distributor shall buy products for resale. The difference between Distributor's purchase price and Distributor's selling price to its customers shall be Distributor's sole remuneration for the sale of Products (for purposes of this agreement, "*Gross Margin*"). Distributor will receive no commission on any sales of Products.

    D.    Distributor's purchase price does not include any federal, state, or local taxes that may be applicable to the Products. When, if at all, Reflok-NA has the legal obligation to collect such taxes, the appropriate amount shall be added to Distributor's invoice and paid by Distributor unless Distributor provides a valid tax exemption certificate authorized by the appropriate taxing authority.

    E.    Distributor shall perform its duties in accordance with the sales policy of Reflok-NA as reflected in this Agreement and any amendments hereto, and as may be established unilaterally hereafter by Reflok-NA from time to time by giving written notice to Distributor. Any deviation by Distributor from such policy or policies shall constitute an Event of Default (as defined in Section X., A. below) under this Agreement.

    F.    In certain situations, Distributor will be required to split its Gross Margin with another distributor and/or representative. In other situations, Distributor shall be entitled to receive a portion of another distributor's or representative's Gross Margin. These splits will follow the current Daikin contract splits. For territories unassigned by Reflok-NA, Distributor shall be entitled to one hundred percent (100%) of Gross Margin on each order installed by Distributor in that territory. In the event of any dispute between Distributors and another distributor and/or representative regarding a Gross Margin split, Reflok-NA will resolve the dispute in its sole discretion, and Reflok-NA's decision shall be final and binding on all parties. Reflok-NA encourages Distributor to report any such improper sales activities so that appropriate action can be taken with respect to the distributor engaging in the improper sales activities.

V.    HANDLING OF INQUIRIES AND QUOTATIONS

    A.    Upon request by Reflok-NA, Distributor shall supply Reflok-NA promptly with a copy or other adequate record of any quotation for the sale of the Products made as Distributor for Reflok-NA. Distributor is not authorized to bind Reflok-NA with respect to any quotations

provided with respect to the Products unless specifically authorized in writing in advance by Reflok-NA.

B.  Distributor shall, promptly upon Distributor's receipt thereof, supply Reflok-NA with a copy or other adequate record of all inquiries with respect to the Products received by Distributor from persons outside the Territory.

## VI.    HANDLING AND ACCEPTANCE OF ORDERS

A.  All purchase orders for the Products are to be in writing and directed to Reflok-NA. No order shall be binding upon Reflok-NA until accepted by Reflok-NA in writing and Reflok-NA shall have no liability to Distributor with respect to any purchase orders that are not so accepted. No partial shipment of an order shall constitute acceptance of the entire order, absent Reflok-NA's written acceptance of the entire order. Distributor's purchase orders submitted to Reflok-NA from time to time with respect to Products to be purchased shall be governed by the terms of this Agreement, and nothing in such purchase order shall in any way modify or vary the terms of purchase or add any additional terms or conditions as set forth herein.

B.  Distributor shall not, without Reflok-NA's prior written approval, alter, enlarge or limit orders once accepted by Reflok-NA, or accept the return of or make any allowance for Products sold. Once an order is received by Reflok-NA, any cancellation or change to the sales order will result in the following charges to Distributor: (1) the cost of the labor to rework/modify the Product, *plus* (2) the cost of any parts that were bought exclusively for the order being changed or cancelled.

C.  All Products delivered pursuant to the terms of this Agreement shall be suitably packed for truck freight shipment in Reflok-NA's standard shipping cartons, marked for shipment at Distributor's address set forth at the end of this Agreement, and delivered to Distributor or its carrier agent F.O.B. Reflok-NA's manufacturing or distribution facilities, at which time title to such Products and risk of loss shall pass to Distributor. Unless otherwise instructed in writing by Distributor, Reflok-NA shall select the carrier. Reflok-NA shall not be liable for loss, damage, detention or delay resulting from causes beyond its reasonable control or caused by fire, strike, civil or military authority, priorities established by the United States Government or any department or branch or distributor thereof, insurrection, riot, embargo, transportation shortage or delays, wrecks, or inability to obtain necessary labor, materials or manufacturing facilities from usual sources, including Reflok-NA itself. Delivery dates will be extended to the extent of delays caused by the foregoing.

D.  Reflok-NA hereby reserves, and Distributor hereby grants to Reflok-NA, a purchase money security interest in each Product sold by Reflok-NA to Distributor under this Agreement. If Distributor sells or leases such product to another party prior to Distributor's payment of the full amount of the purchase price to Reflok-NA for such Product, then the security interest granted herein shall cover the proceeds from such sale or lease. These interests will be satisfied by payment in full of Distributor's purchase price for such Product in accordance with the terms of this Agreement. Distributor hereby appoints Reflok-NA as its attorney-in-fact to execute, on Distributor's behalf and in Distributor's name, financing statements and other instruments necessary to perfect Reflok-NA's security interest in each Product for the amount of the purchase price of such Product. A copy of this Agreement may be filed with the appropriate authorities at any time after the execution of same as a financing statement or chattel mortgage to perfect Reflok-NA's security interest.

E.  Reflok-NA hereby warrants for one year from the date of installation that, when shipped by Reflok-NA, the Products will be free from defects in materials, workmanship and manufacturing and substantially conform to the specifications in the purchase order submitted by Distributor for such Products, provided that this warranty shall not extend to any Products which have been subjected to accident, alteration, misuse, or abuse, or utilized by Distributor other than for their intended purposes.  Reflok-NA hereby agrees to indemnify and hold Distributor harmless from any claims of third parties arising directly out of Reflok-NA's breach of the foregoing warranty for any Product shipped to Distributor during the term of this Agreement, provided that such indemnification shall not apply to the extent of any negligence, misrepresentation, or willful misconduct on the part of Distributor.  In the event that Distributor receives notice of any such claim or threatened claim, Distributor shall provide notice to Reflok-NA of such claim, and any and all documentation in connection therewith, within thirty (30) days of Distributor's receipt of such claim or within (30) days of the date upon which Distributor receives actual notice of any threatened claim (as applicable). Distributor's failure to timely tender any such claim to Reflok-NA shall be deemed a waiver of Distributor's rights under this express warranty.

F.  EXCEPT FOR THE FOREGOING EXPRESS WARRANTY PROVIDED BY REFLOK-NA TO DISTRIBUTOR FOR ANY PRODUCT, REFLOK-NA GRANTS NO WARRANTIES, EXPRESS OR IMPLIED, WRITTEN OR ORAL, WHETHER BY STATUTE OR OTHERWISE, REGARDING THE PRODUCTS, THEIR FITNESS FOR ANY PURPOSE, THEIR QUALITY, MERCHANTABILITY, OR OTHERWISE.  WITHOUT LIMITING THE SCOPE OF THE FOREGOING AND WITH THE EXCEPTION OF THE INDEMNITY PROVIDED IN THE FOREGOING PARAGRAPH, MANUFACTURER'S LIABILITY TO DISTRIBUTOR OR ANY END USER OR CUSTOMER UNDER ANY WARRANTY EXPRESSLY GIVEN OR DEEMED TO BE GIVEN BY REFLOK-NA SHALL BE LIMITED TO A REFUND OF THE END USER OR CUSTOMER'S PURCHASE PRICE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, IN NO EVENT SHALL REFLOK-NA BE LIABLE FOR THE COST OF PROCUREMENT OF SUBSTITUTE GOODS BY THE END USER OR CUSTOMER OR FOR ANY SPECIAL, CONSEQUENTIAL, OR INCIDENTAL DAMAGES FOR A BREACH OF ANY SUCH WARRANTY, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS, LOSS OF BUSINESS, AND PUNITIVE DAMAGES.

## VII.  INVOICES AND COLLECTIONS; AUDIT; RECORDS

A.  Distributor shall be exclusively responsible for its own invoicing, collections, and other responsibilities in connection with Distributor's resale of the Products.  Payment to Reflok-NA by Distributor for Products ordered by Distributor shall be in accordance with the terms set forth on Exhibit D attached hereto, as modified from time to time by Reflok-NA as set forth in this Agreement.  If at the time Distributor places any order, Distributor has invoices outstanding that remain due and have not been paid in accordance with such terms, then Reflok-NA shall be entitled to deny Distributor credit and insist on cash in advance or other payment terms.

B.  Distributor shall not make any allowances, make any adjustments to invoices, or authorize the return of any Products unless defective or damaged, unless given specific advance written authorization by Reflok-NA.  If Distributor makes an allowance, adjusts an invoice, or authorizes a Product return without Reflok-NA's advance written authorization, then Distributor shall be obligated to pay Reflok-NA the invoiced amount for the returned Products.

C.  Reflok-NA personnel shall have the right to request and perform periodic audits of previous buy/resell orders in order to maintain market price intelligence. Distributor will be given reasonable notice and a list of specific orders for audit. Distributor agrees to fully cooperate and provide any and all requested records for said audit.

D.  Distributor shall store and maintain all legally-mandated records for a period of twenty-four (24) months (or such longer period as may be required by law) from the date of production of such records, provided, however, that Distributor shall not be required to retain any such records for longer than twelve (12) months following the termination of this Agreement for any reason.

## VIII.  REPRESENTATIONS AND WARRANTIES OF DISTRIBUTOR

A.  Distributor is a Corporation, duly organized, validly existing, and in good standing under the laws of the State of Texas. Distributor is duly qualified and authorized to do business and is in good standing in each state or jurisdiction where the character of its properties or the nature of its activities make such qualification necessary, including, without limitation, within the Territory. The person or persons signing this Agreement on behalf of Distributor have been duly authorized to do so and no other or further corporate actions or authorizations are necessary for Distributor to execute and deliver this Agreement and to perform its obligations hereunder.

B.  Distributor's execution and delivery of, and performance under, this Agreement will not violate any provision of the organizational documents of Distributor or violate the terms of any laws or agreements to which Distributor is subject. To the best of Distributor's knowledge, no actions, suits, or proceedings are pending or threatened which could prevent Distributor's execution and delivery of, or performance under, this Agreement or the consummation of the transactions set forth herein.

C.  Distributor holds, and shall continue throughout the term of this Agreement to maintain in full force and effect, all required governmental and non-governmental third-party licenses, approvals, authorizations, consents, and/or permits necessary to perform its obligations under this Agreement.

D.  During the term of this Agreement, Distributor shall maintain a net worth and working capital sufficient, in Reflok-NA's reasonable judgment, to allow Distributor to perform fully and faithfully its obligations under this Agreement. Distributor shall devote sufficient financial resources and technically-qualified sales representatives to the Products to fulfill its responsibilities under this Agreement.

## IX.  MARKS & CONFIDENTIAL INFORMATION

A.  Distributor is authorized to use, but only for the purpose of promoting the Products, the trade names and trademarks of Reflok-NA. In addition, Distributor is authorized to use any material copyrighted by Reflok-NA, but only for the purposes of promoting the Products. The use by Distributor of any of these property rights is authorized only for the purposes herein set forth, and upon termination of this Agreement for any reason such authorization shall immediately cease. Any other use of a Reflok-NA trade name or trademark must first be approved in writing by Reflok-NA, as must any other use of Reflok-NA copyrighted materials.

B.  Distributor acknowledges that by reason of its relationship to Reflok-NA hereunder it will have access to certain information and materials concerning Reflok-NA's business, plans, customers, technology, and products that are confidential and of substantial value to Reflok-NA, which value would be impaired if such information were disclosed to third parties (the "*Confidential Information*"). Distributor agrees to use the Confidential Information only for the purposes of representing Reflok-NA and will not use it in any way for its own account or the account of any third party, nor shall Distributor disclose to any third party any such Confidential Information revealed to it by Reflok-NA. Distributor agrees to hold any Confidential Information received by it in the strictest confidence. Distributor shall not publish any technical description of the Products beyond the description published by Reflok-NA. Upon request by Distributor, Reflok-NA shall advise Distributor whether it considers any particular information or materials to be confidential. Distributor agrees to return to Reflok-NA, immediately upon request by Reflok-NA or immediately upon the termination of this Agreement, any and all copies of any such Confidential Information and to delete any and all such information from any computer data base or other electronic storage medium.

X.  **DEFAULT; INDEMNITY AND LIMITATION OF LIABILITY**

A.  Distributor shall be deemed to be in default under this Agreement in each or any of the following events: (1) Distributor fails to pay any amounts when due hereunder; (2) a breach of any representation or warranty of Distributor hereunder; (3) the insolvency, bankruptcy (voluntary or involuntary), dissolution, or other cessation of business activities by Distributor; (5) any violation of the provisions of Article X above; (4) a breach or violation of any term, provision, or covenant of this agreement which is not remedied within ten (10) days from the date the breach first occurred (each an "*Event of Default*"). Upon an Event of Default, Reflok-NA shall be entitled to exercise any and all rights and remedies available to it under this Agreement, at law, or in equity, except as otherwise expressly limited hereunder. Such remedies shall be cumulative and non-exclusive and Reflok-NA's exercise of any one remedy shall not preclude its exercise of any other remedy available to it.

B.  REFLOK-NA'S LIABILITY ARISING OUT OF THIS AGREEMENT AND/OR SALE OF THE PRODUCTS SHALL BE LIMITED TO THE AMOUNT PAID BY THE CUSTOMER FOR THE PRODUCT. IN NO EVENT SHALL REFLOK-NA BE LIABLE FOR COSTS OF PROCUREMENT OF SUBSTITUTE GOODS BY ANYONE. IN NO EVENT SHALL REFLOK-NA BE LIABLE TO DISTRIBUTOR OR ANY OTHER ENTITY FOR ANY SPECIAL, CONSEQUENTIAL, OR OTHER DAMAGES, HOWEVER CAUSED, WHETHER FOR BREACH OF CONTRACT, NEGLIGENCE OR OTHERWISE, AND WHETHER OR NOT REFLOK-NA HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. THE ESSENTIAL PURPOSE OF THIS PROVISION IS TO LIMIT THE POTENTIAL LIABILITY OF REFLOK-NA ARISING OUT OF THIS AGREEMENT AND/OR IN CONNECTION WITH THE SALE OF THE PRODUCTS.

C.  Reflok-NA will provide Distributor with proper training in the appropriate use, application and installation of Reflok-NA products, and Distributor with then be wholly responsible for the proper training and supervision of its customers in the use, application and installation of Reflok-NA products. Distributor will defend (with counsel reasonably acceptable to Reflok-NA), indemnify, and hold harmless Reflok-NA and its members, directors, officers, employees, agents, and representatives, from any cost, expense, liability, claim, action, demand, loss, damage, penalty, or settlement of any kind and nature (including attorneys' fees) incurred as a result of the operations of Distributor, a breach of any of Distributor's representations or warranties hereunder, or a violation of any provision of this Agreement,

except to the extent that any such claim or loss is the direct result of the negligence of Reflok-NA or Reflok-NA's breach of the terms of this Agreement.

D. Upon execution of this Agreement, Reflok-NA shall add Distributor as an "additional insured" to the Reflok-NA's general liability insurance policy, with limits of $2,000,000 in the aggregate and $1,000,000 per occurrence. Such insurance shall remain in effect and Distributor shall remain as an "additional insured" throughout the term of this Agreement, provided that such insurance policy shall cover both any covered claims made during the term of this Agreement and any covered perils in connection with the Products set forth on Exhibit A delivered by Reflok-NA to Distributor which arise during the term of this Agreement or prior to the expiration of any relevant statutes of limitations or repose. Upon execution of this Agreement, upon any renewal or replacement of the policy and from time to time upon request from Distributor, Reflok-NA shall provide Distributor with certification from the insurer that Distributor is an additional insured under the general liability policy and of the coverage provided thereunder.

XI.   MISCELLANEOUS PROVISIONS

A. All notices required under this Agreement shall be in writing and shall be deemed to have been given (1) immediately when personally delivered (or delivered by courier); (2) when received (or when delivery is first refused) by registered, certified, or first class mail, return receipt requested; (3) immediately upon receipt if sent by facsimile, telecopy, or other electronic transmission device. Notices shall be sent to the addresses of the parties set forth at the end of this Agreement, as changed from time-to-time by a party by notice provided to the other party in accordance with this Section.

B. This Agreement sets forth the entire understanding between the parties with respect to the subject matter set forth herein, and supersedes and cancels any and all previous Agreements between the parties, whether written or oral, regarding such subject matter. No amendment to this Agreement shall be valid unless in writing and signed by the both of the parties hereto.

C. If any provisions of this Agreement, or the application thereof, is held to be unenforceable in any respect, the other provisions of this Agreement shall remain enforceable to the full extent of the law and shall be construed, to the extent possible, to give the fullest effect to the intent of the parties as set forth in this Agreement.

D. The rights and duties of Distributor under this Agreement are not subject to assignment or delegation by Distributor, whether by operation of law or otherwise, without the prior written consent of Reflok-NA. This Agreement shall be freely assignable by Reflok-NA, and shall inure to the benefit of and be binding upon the successors and assigns of Reflok-NA.

E. Except as the provisions of such laws are lawfully modified by the terms of this Agreement, this Agreement shall be governed by the laws of the State of Idaho, without regard to the choice-of-laws or conflicts-of-law's provisions of such state which would apply the laws of any other jurisdiction.

F. Each of the signatories to this Agreement represents and warrants that he or she is duly authorized to execute this Agreement. This Agreement may be signed in multiple counterparts, each of which shall be deemed to be an original, but all of which together shall

constitute one and the same instrument.  Delivery of signed counterparts via facsimile or PDF shall be deemed to be as effective as delivery of an original counterpart signature.

G.  No delay or omission by a party to exercise any right, power, or remedy accruing hereunder shall impair any such right, power, or remedy of such party, nor shall it be construed as a waiver of such right, power, or remedy, or of any breach or default thereafter occurring.  Any waiver, permit, consent, or approval of any kind or character must be in writing and signed by the party to be bound thereby.

H.  This Agreement is intended solely for the benefit of the parties and nothing in this Agreement shall be construed to create any duty, standard of care of liability to, nor confer any right of suit or action, or other rights and remedies of any nature whatsoever, on any person other than the parties hereto.

I.  The prevailing party in any legal action brought by one party against the other arising out of or in connection with this Agreement shall be entitled, in addition to any other rights and remedies it may have hereunder or at law or in equity, to reimbursement for its legal expenses, including court costs, reasonable attorneys' or other consultants' fees, and costs of appeal.

J.  The captions, section headings, and paragraph numbers of this Agreement are for convenience only and shall in no way be held to explain, modify, amplify, or aid in the interpretation, construction, or meaning of the provisions of this Agreement.  Where the context requires in this Agreement, any singular nouns shall include the plural and vise-versa, and "shall" and "will" constitute mandatory obligations, while "may" implies a discretionary or permissive act.

K.  The term "Exclusive Distributor" shall mean that the Distributor stocks adequate inventories locally of all the Reflok stocking products. These products shall be welded Refjoints, aluminum tubing, connectors, reducers, expansion joints, bends, tools and sample cases. Excluded products are job specific items such as Tri-connectors and BS box connectors that are ordered separately per project. Any firm not stocking all these items will not be considered exclusive, and the territory will be open to additional non-exclusive distribution by Reflok. If the agreement terminates, Reflok will buy back the current model inventories less a 25% restocking fee. Reflok shall have the right to insist that any or all Reflok products are returned within a 20 day period after termination. The Distributor shall pay all returned freight cost.

L. **IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first set forth above.

DISTRIBUTOR:                          REFLOK-NA:

Direct Expansion Solutions (dba DXS)  REFLOK NORTH AMERICA, INC.

By:Thomas McLaughlin        2.17.12  By:
                                        Garry L. Rose, National Sales Manager
Its: Principal                        Address:

Address:
                                      1753 Vineyard Avenue
14101 Hwy 290W                        Saint Helena, CA 94574
#2000A                                Fax:
Austin TX 78737
Fax: 512-894-0867


Distributor specifically agrees to the credit terms of payment stated in Exhibit D.

By: Thomas McLaughlin

Its: Principal

                          2.17.12

**Exhibit A**
Products

1.    The Agreement shall cover and include the following Products:

     a.    VRF and/or VRV Tri-Connector and Quad-Connector Branch Piping Fittings.

     b.    Branch selector box swaged connector fittings utilizing the Reflok mechanical joining method.

     c.    Reflok mechanical or hydraulically connected piping connections and flare connections.

     d.    Reflok mechanical or hydraulically connected flexible connections.

     e.    Reflok Aluminum refrigeration piping and tubing.

     f.    Reflok Piping assembly tools.

**Exhibit B**
Territory Maps(s)

Description of Territory:

All Counties

The states of:

TEXAS

**Exhibit C**
House Accounts

**Exhibit D**
Terms

1. Entire connector and tool product line—Payment is due in FULL, 30 days from date of invoice, NET 30 days.

2. Aluminum Tube or Aluminum Piping—Payment is due in FULL, 30 days from date of invoice, NET 30 days.

3. Freight terms—Reflok will pay all overseas freight and tariff costs into North America. All freight shipments originating in North America are to be paid by the Distributor and are FOB factory warehouse. These freight costs are to be added to the Distributor net pricing and are not included in the Reflok pricing program. All freight, insurance, and other shipping expenses, as well as any special packing expense, shall be paid by Distributor. Distributor shall also bear all applicable taxes, duties, and similar charges that may be assessed against the Products after delivery to the carrier at Reflok-NA's manufacturing or distribution facility, as applicable.

4. Terms are to be strictly enforced.

5105769_2.DOCX